## JIM STRIBLING v. STATE.

No. A-3279—Opinion Filed Oct 9, 1920.

(192 Pac. 590.)

(Syllabus.)

1. **HOMICIDE—Assault With Intent to Kill—Charge on Self-Defense—Prejudicial Error.** In a prosecution for assault with intent to kill by shooting another with a pistol, the evidence on the part of the defense tended to show- that the defendant acted in his necessary self-defense. The court instructed the jury in part as follows. "If you find from the testimony beyond a reasonable doubt that the prosecuting witness did assault the defendants with a pistol, or was advancing upon them in such an assault in such a way and manner as to induce the defendants to reasonably believe that their lives were in danger, or that serious bodily harm was about to be done them, then you are instructed that they had a right under the law to use such means as was necessary to defend themselves against such assault on the part of the prosecuting witness. And if you so find from the evidence, beyond a reasonable doubt, you should acquit the defendants. Held, prejudicial error as placing the burden of proof upon the defendant and requiring the jury before finding for acquittal to believe from the evidence, beyond a reasonable doubt, that the defendant fired the shot in self-defense.

2. **EVIDENCE—Burden of Proof—Presumption of Innocence.** The burden does not rest upon the defendant to establish even to a reasonable probability the truth of an affirmative defense; if, upon the evidence both for the state and the defendant, a reasonable doubt is created as to the guilt of the defendant, he is entitled to the benefit of it, and in this respect the burden never shifts from the state to the defendant.

*Appeal from District Court, Carter County;*

*W. F. Freeman, Judge.*

Jim Stribling was convicted of assault with intent to kill, and he appeals. Reversed, and a new trial awarded.

*Brown & Williams,* for plaintiff in error.

*S. P. Freeling,* Atty. Gen., and *W. C. Hall,* Asst. Atty. Gen., for the state.

DOYLE, P. J. Plaintiff in error, Jim Stribling, and Jim Orr were jointly charged with the offense of assault with intent to kill by shooting one Byrd Pruitt with a pistol, and upon their trial the defendant Stribling was found guilty of assault with intent to do bodily harm as charged in the information, and his punishment fixed at imprisonment in the penitentiary for one year. From the judgment rendered on the verdict he appeals. The record discloses in substance these facts: The prosecuting witness, Byrd Pruitt, lived about four miles northeast of Ardmore; the defendant Stribling lived beyond him; on the date alleged both the prosecuting witness and the defendant were in the city of Ardmore, and they started to their respective homes, and the shooting occurred on the road near the home of the prosecuting witness.

The testimony on the part of the state is that the prosecuting witness was at work on his fence along the side of the road when the defendant and Jim Orr came along the road riding in a wagon; that as they passed the prosecuting witness the defendant rose up in the wagon and shot him without any provocation whatever.

The evidence on the part of the defendant was that the prosecuting witness was a short distance in front of him

on the way home, riding a horse, and when he turned into his gate Carl Pruitt, his son, came riding in a lope towards the defendant, and that the prosecuting witness came with him; that there had been some trouble between the defendant and the family of the prosecuting witness.

Byrd Pruitt testified:

"I was fixing the fence by the side of the road, and the bullet hit me on the top of my left shoulder. Jim Stribling fired the shot. Jim Orr was in the wagon. My son Carl was on his horse, and after I fell they continued to shoot."

Carl Pruitt testified:

"Byrd Pruitt is my father; I was coming home from my brother's. I noticed a wagon coming north. Jim Orr was in the seat. I did not see Jim Stribling until he shot the old man. The wagon had sideboards. He jumped up in it and shot the old man twice, and shot a time or two at me before I could get my gun."

The evidence further shows that the defendant and Jim Orr then drove their team in a run up the road with Carl Pruitt following and shooting at them.

For the defense, Jim Orr testified:

"I went to town with Jim Stribling. We left town that day about 4 o'clock. Mr. Pruitt was in front. We saw him ride in at his gate and we saw Carl coming through the field on horse-back towards us. We were driving along the road, and Mr. Pruitt says, 'Wait a minute, Chock' (meaning the defendant). Chock stopped, and he came around on the east side of the wagon and said, 'I heard about them damn threats you have been making about me and my boys,' and Chocks says, 'I ain't made any threats,' and Pruitt started to get his gun, and Chock shot him. Carl was on the west side of the wagon, and he pulled his gun

and began to shoot, and fired several shots. The mules jumped at the first shot, and I fell from the seat."

As a witness in his own behalf the defendant testified:

"I live six miles northeast of Ardmore; I came to town that morning with Dr. Payne's team; hauled a load of cotton for him. Jim Orr was with me. Going home we passed the Pruitt's place. We turned north there. I saw Byrd Pruitt and Carl Pruitt leave the barn. They loped across the pasture to where we were. Byrd threw up his hands and said, 'Stop there, Chock,' and he and Carl crawled through the fence. The old man walked around the wagon and said, 'I have been hearing about some of your damn threats about me and my boys,' I told him, 'No I hadn't made any.' He says, 'By God! we will see about it.' He came on pretty close, and reached for his gun and pulled it up like this. I had my gun in the holster. I grabbed it, and shot at him the first shot; and shot at him again. I must have hit him the second shot. Carl Pruitt was on the left, and he turned loose as I fired the first shot. He fired several shots."

A reversal of the judgment is asked on account of alleged errors in the instructions given by the court, and in refusing to give requested instructions.

Among the instructions given by the court is the following:

"You are instructed that, in order to justify the defendant in shooting and wounding the prosecuting witness, Byrd Pruitt, under their plea of self-defense, they, the defendants, must have employed all the means within their power consistent with their safety to have averted their danger and avoided the necessity of shooting and wounding. If you find from the testimony beyond a reasonable doubt that the prosecuting witness, Byrd Pruitt, did assault the defendants with a pistol, or was advancing upon them in such an assault in such a way and manner as to induce the

defendants to reasonably believe that their lives were in danger, or that serious bodily harm was about to be done them then you are instructed that they had a right under the law to use such means as was necessary to defend themselves against such assault on the part of the prosecuting witness. And if you so find from the evidence, beyond a reasonable doubt, you should acquit the defendants."

The effect of this instruction, given by the court, was to place the burden of proving justification in self-defense on the defendant. The law only requires the defendant to raise a reasonable doubt as to his guilt; if he does this, he should be acquitted. The burden does not rest upon the defendant to establish even to a reasonable probability the truth of an affirmative defense. If upon the evidence, both for the state and the defendant, a reasonable doubt is created as to the guilt of the defendant, he is entitled to the benefit of it. The instructions quoted deprived the defendant, not only of the presumption of innocence, but placed the burden on him to prove that he acted in his necessary self-defense, and not only placed upon him the burden of proof, but required him to prove the same beyond a reasonable doubt. *McClatchey v. State,* 12 Okla. Cr. 17, 152 Pac. 1136; *Smith v. State,* 12 Okla. Cr. 489, 159 Pac. 668.

It follows that the defendant has not had that fair and impartial trial which the law guarantees to one accused of crime. This conclusion makes it unnecessary to consider the other questions in the case. Because the court erred in giving the instruction above quoted, the judgment is reversed, and a new trial awarded.

ARMSTRONG and MATSON, JJ., concur.