## BOND v. STATE.

No. A-11022.   Oct. 19, 1949.

(210 P. 2d 784.)

L. B. Clay, Hobart, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

JONES, P. J. The defendant, Charles Efton Bond, was charged in the district court of Kiowa county, with the crime of rape, allegedly committed on his daughter, 15 years of age, was convicted of rape in the second de-

gree and sentenced to serve five years imprisonment in the State Penitentiary.

The record is replete with errors. The principal assignments of errors argued in the brief of defendant are:

1. Error of the court in overruling the motion for an instructed verdict on the ground that the state wholly failed to prove that a crime had been committed.

2. Error of the court in admitting evidence to impeach the prosecuting witness.

3. Error of the court in treating the evidence admitted for the purpose of impeachment as substantive evidence, and instructing the jury to consider the same as substantive evidence.

These assignments of error are so related they will be considered together.

Joe Deanne Bond, daughter of defendant, and the person upon whom the rape was allegedly committed, was called as the first witness for the state. She testified positively that the defendant did not at anytime have sexual intercourse with her. The county attorney then stated to the court that she had made a previous statement and asked permission to cross-examine her. Counsel for the defendant objected to the state's cross-examining their own witness and it was then stipulated that the witness at the time of the preliminary examination testifed exactly the same as she had done in the district court, that is, that the defendant had never had sexual intercourse with her, and it was further stipulated that she had not given any statement to the county attorney since the preliminary examination to indicate that she would testify differently at the trial in district court from the evidence she gave at the preliminary hearing.

The court then overruled the objection of the counsel for defendant and allowed the county attorney to cross-examine her concerning a statement which she gave to him in his office at the time charges were filed against the defendant. The witness admitted giving the county attorney a statement, but denied that it was the truth and again emphasized that the defendant had not had sexual intercourse with her.

The county attorney was then allowed to introduce evidence of other people to whom the daughter had allegedly made statements that her father had had sexual relations with her. All of this evidence was admitted for the purpose of impeaching the state's own witness over the vigorous objections of counsel for defendant. In these statements to the county attorney before the charges were filed, and to the other individuals who testified for the state, the daughter allegedly said that the defendant had had sexual intercourse with her on three or four different occasions with her consent.

At the conclusion of the case, the court gave the following instruction which is assigned as error:

"The State has been permitted to introduce evidence tending to prove other acts of sexual intercourse had between the defendant and Joe Deanne Bond, and you are to consider such other acts. if you find the same to be true, for the purpose of enabling you to arrive at your verdict as to the guilt or innocence of the defendant for the specific act charged in the information at the time named therein, so far as the same may throw light upon the charge as set out in the information."

The only evidence, other than the evidence of Joe Deanne Bond, and the witnesses who were introduced to impeach her, was the testimony of the arresting officer that the defendant had confessed to him that he had committed the crime.

In Osborn v. State, 86 Okla. Cr. 259, 194 P. 2d 176, 177, this court stated:

"In every criminal prosecution it devolves upon the state to prove, first, the corpus delicti; second, that the crime charged was committed by the accused.

"The 'corpus delicti' means, when applied to any particular offense, the actual commission by some one of the particular offense charged.

"A conviction cannot be had upon a defendant's extrajudicial admissions alone, unless the state proves in some way the corpus delicti, independent of the defendant's admission. Direct and positive proof is not essential to establish the corpus delicti, and it may be proved by circumstantial evidence. When it is proved by circumstantial evidence, the question should be submitted to the jury along with other questions of fact in the case, as to whether or not the state has established the corpus delicti beyond a reasonable doubt."

Here, there was no evidence that a crime had been committed. The daughter said there was no act of sexual intercourse. The evidence of the impeaching witnesses would not be substantive proof that a crime was committed. Although a doctor's name appears endorsed on the information, the doctor was never called as a witness and there was no proof that the girl had ever had sexual intercourse with anyone.

In the early case of Sturgis v. State, 2 Okla. Cr. 362, 102 P. 57-58, this court discussed at length the procedure relating to the right of a party to plead surprise and cross-examine their own witness.

The rules of law established in that case as shown by the syllabus reads:

"(1) When contradictory statements made by a witness are admissible in evidence for the purpose of impeaching him, they must be confined to contradictions

of the testimony of the witness which are injurious to the party seeking to impeach him, and it is the duty of the court to clearly inform the jury that such statements cannot be considered as independent substantive evidence against or in favor of the defendant, and that the jury can only consider such contradictory statements for the purpose of affecting the credibility of the witness, if they decide that such statements do have this effect, and that it is unlawful for the jury to consider such statements for any other purpose.

"(m) When a party places a witness upon the stand with notice that such witness will testify adversely to such party, he cannot claim surprise at such testimony, and will not be permitted to impeach the witness in any manner."

In Dunham v. State, 78 Okla. Cr. 54, 143 P. 2d 834, 835, it is stated:

"A witness' prior contradictory statement when introduced is to be considered only for the purpose of impeachment and to explain the calling of such witness. It cannot be used as substantive testimony tending to prove the truth of the facts stated. The court, by proper instruction, should limit the application of such testimony to this purpose."

This court has consistently adhered to the above-stated rules of law.

The trial court erred in giving the instruction hereinabove set forth in which he treated the evidence of the impeaching witnesses as substantive evidence and allowed it to be considered as stated in the instruction, "For the purpose of enabling you to arrive at your verdict as to the guilt or innocence of the defendant for the specific charge."

We direct the trial court's attention to the fact that this would have been an improper instruction even if the daughter had herself testified that the defendant had com-

mitted the crime of rape and had testified to the commission of the act on other occasions. For a discussion of this question see the case of Herren v. State, 75 Okla. Cr. 251, 130 P. 2d 325.

Since there was no corpus delicti proved, it follows that the court erred in overruling the demurrer to the evidence and refusing to instruct the jury to return a verdict of not guilty.

The judgment of the district court of Kiowa county is reversed and the defendant is discharged.

BRETT and POWELL, JJ., concur.