TAYLOR v. STATE.

No. A-11067.    Nov. 16, 1949.

(212 P. 2d 164.)

Cecil E. F. Robertson, Muskogee, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Lewis A. Wallace, Asst. Atty. Gen., for defendant in error.

BRETT, J. The defendant, J. A. Taylor, a negro physician, was charged by information in the district court of Muskogee county, Okla., with the crime of having performed an abortion upon Bobbie Markham, a white girl, in the city of Muskogee, on July 17, 1947. The defendant entered a plea of not guilty to the charge, was tried, and convicted by a jury which left the infliction of punishment up to the court. The trial court sentenced the defendant to one year in the penitentiary.

The prosecution was based upon the provisions of Title 21 O. S. 1941 § 861, which provides:

"Every person who administers to any pregnant woman, or who prescribes for any such woman, or advises or procures any such woman to take any medicine, drug or substance, or uses or employs any instrument, or other means whatever, with intent thereby to procure the miscarriage of such woman, unless the same is necessary to preserve her life, is punishable by imprisonment in the penitentiary not exceeding three years, or in a county jail not exceeding one year."

The defendant raises numerous assignments of error, but in disposing of the case it is only necessary to consider three assignments touching upon the insufficiency of the evidence: First, that the court erred in not sustaining the defendant's demurrer to the evidence; second, in not directing a verdict in favor of the defendant; and, third, in not granting the defendant's motion for a new trial. The statutes of the state of Oklahoma provide, Title 22 O. S. 1941 § 836, as follows:

"A defendant in a criminal action is presumed to be innocent until the contrary is proved, and in case of a reasonable doubt as to whether his guilt is satisfactorily shown, he is entitled to be acquitted."

It has been said:

"The burden in a criminal case, whether for misdemeanor or felony, is on the prosecution to establish the guilt of accused, beyond a reasonable doubt, that is, to prove every essential element of the crime charged, every fact and circumstance essential to the guilt of the accused, as though the whole issue rested on it." 22 C.J.S., Criminal Law, § 566, pages 881, 882.

In this connection, see Lowe v. State, 42 Okla. Cr. 313, 275 P. 1066; Crouse v. State, 39 Okla. Cr. 127, 263 P. 681; Stribling v. State, 18 Okla. Cr. 48, 192 P. 590.

In Lowe v. State, supra, this court said [42 Okla. Cr. 313, 275 P. 1067]:

"The burden to prove the guilt of an accused is always on the state, * * *. Section 2692, Comp. St. 1921 [22 O. S. 1941 § 836]; Beal v. State, 12 Okla. Cr. 157, 152 P. 808; Findley v. State, 13 Okla. Cr. 128, 162 P. 680; Stribling v. State, 18 Okla. Cr. 48, 192 P. 590; Tabor v. State, 23 Okla. Cr. 303, 214 P. 564; Hooper et al. v. State, 26 Okla. Cr. 227, 223 P. 209; Brennon v. State, 27 Okla. Cr. 286, 226 P. 1062; Jay et al. v. State, 42 Okla. Cr. 32, 274 P. 487."

In the foregoing connection this court has said, in Looney v. State, 59 Okla. Cr. 338, 60 P. 2d 214, 215:

"In every criminal prosecution it [devolves upon] the state to prove, first, the corpus delicti; and, second, that the crime charged was committed by the accused."

In this same connection see Osborn v. State, 86 Okla. Cr. 259, 194 P. 2d 176; Robinson v. State, 71 Okla. Cr. 75, 108 P. 2d 196, 198; Bond v. State, 90 Okla. Cr. 110, 210 P. 2d 784. The defendant's conviction in this case must be measured by the foregoing rules.

The evidence is sufficient in this case to support the fact of some one having performed an abortion. The pertinent part of the testimony of Dr. Ballantine, a reputable physician of Muskogee, Okla., discloses that he

had occasion to wait on the prosecutrix on or about July 17, 1947. His testimony reveals that he was first contacted by telephone and a short time thereafter two white women came to his office. He said that he made an examination of her and he suggested that she be taken to the hospital; that he made an examination of her and determined that in his opinion instruments had been used on her private parts for the purpose of procuring an abortion; that the mouth of the womb known as the cervix was slightly torn and bleeding at the time and that in his opinion instruments had been used. On cross-examination the doctor admitted that the tearing that he observed at the mouth of the womb or the cervix could have been produced by some cause other than a doctor's instruments, or, in other words, the abortion could have been performed by some one other than a doctor. The foregoing evidence was sufficient to establish the corpus delicti, that is, that an abortion had been performed by some one, but the mere establishing of the corpus delicti within itself was not sufficient in the light of the foregoing authorities. It then became necessary for the state to connect the defendant with the commission of the crime. This element necessary to support the conviction is entirely lacking in the evidence. In this connection the evidence of the prosecutrix shows no one but the prosecutrix and the defendant himself were present when the alleged abortion was supposed to have been performed. The connection of the defendant with the crime is therefore, in this case, dependent upon the evidence offered by the prosecutrix. In this connection she testified on direct examination as follows, to wit:

"Q. Did you go and see any doctor on that day Miss Markham? A. I went down to see what was wrong with me. Q. What doctor did you go to please, mam? A. Doctor Taylor, I think. Q. That is the defendant—is that

the doctor you went down to see? A. I am not sure but I think it is. It has been so long— Q. Just tell the court and jury, Miss Markham, why you went to see a colored doctor. A. I was menstruating and I was ashamed to go to a white doctor I had taken so much medicine and Wednesday I carried two cases of pop, heavy pop down there. Q. Were you pregnant at that time or did you know? A. I suppose I was. Q. Did the doctor examine you and tell you whether or not you were pregnant? A. He examined me. Q. Did he do any thing other than that? A. He told me he didn't. Q. Did he do any thing other than that? A. He said he didn't. Q. Have you paid him? A. I paid him $5 for the visit. Q. How long were you in his office please, mam? A. I don't know how long it was—I was there about 30 minutes. Q. About 30 minutes. After that, did you go back to the hotel, after you left the doctor's office? A. Yes, sir. Q. Were you in any more pain or sicker then? A. Yes, sir. Q. Do you know who called Dr. Ballantine? A. No, sir. Q. Were you later taken to the Baptist Hospital? A. Yes, sir. Q. And did Dr. Ballantine wait on you there at the Baptist Hospital? A. A doctor came in, I guess it was Dr. Ballantine. Q. You was in quite a bit of pain? A. No, sir, I wasn't in any pain at all. Q. You don't know who the doctor was? A. No, sir. Q. Do you know whether or not Dr. Ballantine was paid for his services? A. He was paid $50. Q. Do you know who paid him? A. That boy gave my sister $50. (Referring to Johnnie Doyle, her boy friend.) Q. Do you recall where you learned where Dr. Taylor's office was located? A. Well, there was colored girl told me where it was and I went in the first doctor's office up there. Q. I will ask you if you didn't identify Dr. Taylor as being the doctor that you went to be examined by? A. I think that is him but I am not sure. I would not say positively. Q. What is your best judgment at this time Miss Markham as to whether or not that is the man that examined you? A. Well, I think that is the one."

On cross-examination she testified as follows:

"Q. I believe you said you wanted a doctor to examine you? A. Yes, sir. Q. Did he examine you? A. Yes, sir. Q. Did he give you any treatment? A. No, sir. He mashed on my stomach like any doctor would. Q. And didn't give you any treatment of any kind? A. No, sir. Q. Did any doctor give you any treatment other than him then? A. No, sir."

The defendant did not testify. Only the prosecutrix' evidence could possibly form a basis for the conclusion as to whether or not the defendant committed the crime. It is entirely lacking in that strength of character necessary to make out a case. On reading this opinion, one may therefore logically inquire, the foregoing evidence being such as it is, upon what basis was a conviction had in the case at bar. The answer to this question is by studied resort to incompetent evidence such as hearsay, misconduct of the county attorney, and insinuations. The conviction was predicated upon the jury being misled by such as the following: Dr. H. T. Ballantine was permitted to give hearsay testimony. After testifying the two women called him at his office and telling them he could not see them and that he would see them within an hour he said:

"In a short time two white women came to my office. One of them said she was manager of the hotel there and that this young woman had been taken by somebody to an office and an abortion performed that day."

An objection was taken to the foregoing, which was overruled, and an exception saved. It must be observed that the foregoing evidence offered by Dr. Ballantine as to the performance of the abortion was clearly hearsay, was obtained from some third party out of the hearing of the defendant. In Scism v. State, 28 Okla. Cr. 344, 230 P. 941, 942, this court said:

"Apparently, the testimony relied upon by the state to convict in this case was purely hearsay testimony, admitted over the defendant's objection. It needs no argument to show that the testimony of the deputy sheriff, as to statements made by the other two witnesses for the state to him, in the absence of the defendant, was inadmissible and prejudicial to the defendant."

In Mendenhall v. State, 82 Okla. Cr. 220, 168 P. 2d 138, 140, this court said:

"This evidence not being given in the presence of defendant, was clearly hearsay, and if an objection had been made thereto, the court undoubtedly would have sustained the same. But it has often been held that a case will not be reversed by reason of the introduction of evidence which is inadmissible when no exception or objection was taken thereto, unless the admission of the same constitutes fundamental error."

But to add to the situation when objection was made to Dr. Ballantine's hearsay evidence, the county attorney injected the following statement, "She said she was taken to some physician and an abortion performed, and it would be admissible". This attempt on the part of the county attorney to supply what he lacked in positive evidence was clearly erroneous. At another point he said in his examination of Johnnie Doyle, "Well, do you know when this alleged abortion was alleged to have occurred, don't you?" which was another attempt to supply by innuendo what he lacked in positive proof.

Further, the state offered the testimony of Aubrey Chambers, captain of the Muskogee Police Department, who testified he was present when the defendant was questioned by the officers concerning the alleged abortion. He testified as follows:

"He was asked if he made an examination of the young lady and he stated that he had. He was asked

if he examined her privates and he replied that he did. He was asked if the girl was pregnant and he said he didn't know. The doctor then was asked how much he received for his services and he stated he didn't remember. He was asked if it was five dollars and he replied it was more than that. Then he was asked if it wasn't 15 or wasn't it 25 dollars and the doctor replied he didn't know."

This evidence proves nothing more than an examination. It in no way tends to connect the defendant with the performance of an abortion. In fact, it is corroborative of the prosecutrix' testimony as hereinbefore set forth. However, when combined with the county attorney's argument and the imaginative processes of the jury, it became the basis for a fallacious conclusion unsupported by either the law or the evidence. The county attorney's argument is hereinafter discussed.

The assistant county attorney, Mr. Wheeler, in arguing the case, stated the prosecutrix was asked if the defendant was the man that had performed the abortion, and she said "yes". To this statement the counsel for the defendant interposed an objection, and the following colloquy ensued:

"Mr. Wheeler: Your Honor, this girl was asked whether or not this was the man that performed the abortion and she said 'yes'— Mr. Kimble: We object to that and move the Court to declare a mistrial. This is some thing that never happened in this trial. The Court: In the trial she didn't positively identify but she said she thought it was him. Mr. Robertson: But she didn't testify that he performed an abortion, Your Honor, and I will ask the Court to instruct the jury to disregard that statement. The Court: That she stated, that she testified he did perform an abortion? Mr. Norman: *That is what she said down in the County Attorney's office, and she did make that statement.* Mr. Robertson: I ask the Court to instruct the jury to disregard that

statement. The Court: Yes, I think I am entitled to do that. You will disregard that, and go ahead with your argument." (Emphasis supplied.)

The statement of the county attorney to the effect that "that was what she said down in the county attorney's office, and she did make that statement," was unwarranted in the face of the record not supporting the county attorney's statement, and was highly prejudicial. In Childs v. State, 13 Okla. Cr. 461, 165 P. 662, 623, this court said:

"It would seem from the record that the witnesses for the state had testified before a court of inquiry conducted by the county attorney who did not personally appear in the trial of the cause. The statement was, under the circumstances, highly improper and well calculated to bolster up the unsatisfactory testimony of the witnesses for the state. If, as his assistant stated, the county attorney knew that the defendant was guilty, he should have been called as a witness so that the defendant could have the benefit of confrontation and cross-examination. A prosecuting attorney should confine his argument before the jury to a fair discussion of the issues in the case, and improper remarks objected to at the time will be considered and construed in reference to the evidence. If it appears that the improper argument may have determined the verdict, a new trial should be granted. Watson v. State, 7 Okla. Cr. 590, 124 P. 1101; Mulkey v. State, 5 Okla. Cr. 75, 113 P. [532], 533."

In Jones v. State, 20 Okla. Cr. 233, 202 P. 187, this court said:

"Where it is clearly within the power of the state to prove a material fact for the state, and where the state, purposely or inadvertently, fails to produce any testimony on that issue, although there is ample opportunity to do so, it is error for the prosecuting attorney to argue to the jury that such fact exists."

The prosecuting attorney in arguing a case to the jury should confine himself to a fair discussion of matters in the record. In Watson v. State, 7 Okla. Cr. 590, 124 P. 1101, 1108, this court said:

"The average juror holds in high regard, and properly so, the regularly elected prosecuting attorney. The people by electing him have reposed great confidence in his ability and integrity, and the power thus given him must not be used to supply the lack of evidence, or to make greater the weight of the evidence in any case."

Such was the situation as to this argument by the assistant county attorney and the remarks of the county attorney. It was an attempt to supply by insinuation and prejudicial conduct what the state lacked in positive proof.

The Attorney General concedes that the evidence adduced by the state failed to show that an abortion was completely performed upon the prosecutrix by the defendant. He might have conceded that the record fails to show that an abortion either incompletely or completely was performed upon the prosecutrix by the defendant. There is not a scintilla of competent proof tending to connect this defendant with the performance of the herein alleged abortion. In Dobson v. State, 74 Okla. Cr. 341, 126 P. 2d 95, 102, this court said:

"Where the evidence raises a mere suspicion, or, admitting all that it tends to prove, the defendant's guilt is left doubtful or dependent upon mere supposition, surmise, or conjecture, the court should advise the jury to return a verdict of acquittal."

Here, the guilt of the defendant is predicated upon mere supposition, surmise, conjecture, hearsay and unwarranted conduct on the part of the prosecutor. The language employed in Watson v. State, supra, is appli-

cable to the case at bar. Therein it was said, 7 Okla. Cr. at page 602, 124 P. at page 1106:

" 'The action of the attorney for the state was highly reprehensible. A prosecuting attorney is a public officer, "acting in a quasi judicial capacity." It is his duty to use all fair, honorable, reasonable, and lawful means to secure the conviction of the guilty * * *. He should see that they have a fair and impartial trial, and avoid convictions contrary to law. Nothing should tempt him to appeal to prejudices, to pervert the testimony, or make statements to the jury which, whether true or not, have not been proved. The desire for success should never induce him to endeavor to obtain a verdict by arguments based on anything except the evidence in the case and the conclusions legitimately deducible from the law applicable to the same. To convict and punish a person through the influence of prejudice and caprice is as pernicious in its consequences as the escape of a guilty man. The forms of law should never be prostituted to such a purpose. * * *' "

The trial court should have sustained the demurrer to the evidence, and failing to do this in the face of this record, it was his duty to direct the jury to return a verdict of acquittal.

This is a class of case encountered occasionally which confirms the people's right in criminal cases to resort to appellate courts to correct such errors as are evident by the record in this case. Cases such as this constitute a refutation of the contention made by the late Chief Justice Taft advocating the abolition of appeals in criminal cases (15 Yale Journal 1, 12, 1905), and Mr. Justice Brewer (18 Rep. Am. Bar Association, 441, 448). See, also, in this connection "Criminal Appeals in America" by Lester B. Orfield, page 39. For all of the above and foregoing reasons, the judgment and sentence herein imposed is accordingly reversed and remanded for a new

trial, with directions that if the state has no competent evidence upon which to predicate a conviction, this case be dismissed.

JONES, P. J., and POWELL, J., concur.