### JIM RANDOLPH v. STATE.

No. A-4823.    Opinion Filed March 13, 1924.
(223 Pac. 723.)

(Syllabus.)

1. **Homicide—Insufficiency of Circumstantial Evidence to Convict.** To sustain a conviction for murder resting solely upon circumstantial evidence, the circumstances must be consistent with each other and inconsistent with any reasonable hypothesis of innocence.

(a) The evidence examined, and held insufficient under this rule.

2. **Trial—Instructions on Circumstantial Evidence Misleading.** Instructions on circumstantial evidence criticized.

Appeal from District Court, Latimer County; E. F. Lester, Judge.

Jim Randolph was convicted of murder and sentenced to imprisonment for life, and he appeals. Reversed and remanded.

H. T. Church, for plaintiff in error.

The Attorney General, for the State.

BESSEY, J. This conviction rests solely upon circumstantial evidence. The chief issue raised by this appeal is the sufficiency of the evidence, and, incidentally, the sufficiency of the instruction relating to circumstantial evidence; also the refusal of the court to issue a commission to take the depositions of nonresident witnesses; and the overruling of defendant's motion for a continuance.

Late in the evening, just after dark, on the 4th day of March, 1922, John Flemming, a negro, was shot and killed as he was passing through a negro suburb of Wilburton. Many witnesses testified that two shots were fired by some person standing on a railroad grade near the place where the accused was passing, but none of these witnesses could state whether the person who did the shooting was a white man or a negro; none of them could say how the person who did the shooting was dressed; and none of them saw where the person who did the shooting went after firing the shots; that whoever it was lighted a cigarette and disappeared in the darkness. There were miners' cottages thereabouts, occupied by negroes, and the defendant and the deceased resided in separate cottages near the scene of the homicide. Nearly all the state's witnesses said that there was more or less shooting in this negro settlement nearly every night.

Two bullets penetrated the body of Flemming. After receiving these mortal wounds he was carried by two neighbors to his home, where he expired soon afterwards. The first witness who came to where Flemming lay asked him who did the shooting, but received no answer. After he and another had carried him some distance deceased asked them to lay him down to rest. Again inquiry was made as to who fired the shots, but no reply was made. From a bundle of clothes which the deceased was carrying at the time he was shot a 45 caliber bullet was taken. The doctor, the undertaker, and others testified that the wounds appeared to have been made by a bullet of that size.

In the afternoon of the day on which the homicide occurred the defendant and another man had been drinking considerable quantities of Choc beer at a miner's cottage in another part of town. To establish a motive for the homicide witnesses for the state testified that the defendant in two con-

versations that day said: "If you fellows know anything don't tell Flemming, because he will snitch on you"; that he had snitched on defendant, and that he had snitched on the wrong man. The snitching story was related in various ways by different witnesses, to the effect that Flemming better be careful, or some one would snitch on him; that some one was meddling, and defendant was going to stop it; that they would soon all know what he meant; that he would kill some of these snitches, without stating any names. No mention was made as to what any one was supposed to be snitching about.

All of the state's witnesses admitted that the defendant and the deceased had been lifelong friends and associates, and it was shown that soon after the shooting, immediately upon hearing of it, the defendant, with other neighbors, went to deceased's home and rendered such aid as was appropriate, remaining all night with the body of deceased.

In order to better present the import of the state's testimony it may be well to consider what the state did not prove. Except as stated, there was no showing of ill feeling between defendant and deceased; no evidence that defendant was near the scene of the homicide; no identification of the clothing worn by the person who did the shooting; no proof that the defendant ever had a 45-caliber gun; no showing that defendant after the homicide made any statement indicating his guilt; no evidence of flight or concealment; no evidence that defendant had ever been convicted of crime or that he was in the habit of going about armed.

The defendant and a number of witnesses, some of them apparently disinterested, testified positively that at the time the shots were fired defendant was at his father's home with others, listening to a musical entertainment; that he was

there when the information came that Flemming had been shot, and that he and others rushed over to the Flemming cottage, arriving there just after he expired; that defendant stayed at Flemming's home during the remainder of the night.

Where a young negro who had just imbibed freely of Choctaw beer, on an afternoon preceding the homicide, in a boastful manner made to his companions hostile statements against any one who might snitch on him, where such declarations are variously interpreted and testified to by those who heard them, all but two stating that they applied to no one in particular either by name or by implication, and where one stated that he qualified his declaration by saying that the deceased might snitch on any one, and another stated that the defendant said that somebody had meddled in his affairs, and he was tired of it, and was going to stop it, that he would kill whoever did it, such declarations, considered together, unless there are other material facts and circumstances supporting them, are too vague and indefinite to sustain a conviction for murder, being a chain of circumstances not inconsistent with innocence. The fact that defendant habitually smoked cigarettes, and that the person who did the shooting lighted a cigarette before leaving the scene of the homicide, is only a remote circumstance, not inconsistent with the innocence of the defendant, particularly when considered with all the other testimony, including the positive testimony of several witnesses that the defendant was at home when the shooting occurred.

Upon the showing so made by the state, at the close of the state's testimony, the defendant asked the court to instruct the jury to return a verdict in his favor. This request was denied. After the testimony on the part of the defendant had been introduced, showing, among other things, that

the defendant was at his home at the time the fatal shots were fired, and both sides had rested without any testimony being introduced in rebuttal, the defendant again requested a directed verdict in his favor, which was by the court refused.

Upon the law of circumstantial evidence the court instructed the jury as follows:

"To justify a conviction upon circumstantial evidence the circumstances must be considered with each other and inconsistent with any reasonable theory or hypothesis except that the defendant is guilty. If the circumstances are inconsistent with the innocence of the defendant then the jury must convict; however, if the facts are such that upon any reasonable hypothesis consistent with innocence of the defendant, then there cannot be a conviction."

Defendant objected to this instruction at the trial before it was submitted. Under the circumstances shown by the record this instruction is faulty. The sentence "If the circumstances are inconsistent with the innocence of the defendant then the jury must convict," is not properly qualified by what precedes and what follows, and the instruction, construed as a whole, might be misleading. It would also have been better to have substituted the word "consistent" for the word "considered" in the second line of the instruction quoted.

For the reasons stated, the cause should be remanded for a new trial, and it will not be necessary to treat the other assignments of error, except to say that on a retrial of the cause, if the occasion arises, on an application to take depositions the court should be governed by the statutes on that subject, as construed in Westbrook v. State, 14 Okla. Cr. 423, 172 Pac. 464, and Ennis v. State, 13 Okla. Cr. 675, 167 Pac. 229, L. R. A. 1918A, 312.

The cause is accordingly reversed and remanded.

MATSON, P. J., and DOYLE, J., concur.