**Ruby Roberta COLE, Plaintiff in Error,**

**v.**

**The STATE of Oklahoma, Defend-
ant in Error.**

**No. A–14708.**

Court of Criminal Appeals of Oklahoma.

March 4, 1970.

Sam Sullivan, Durant, Thad L. Klutts,
Oklahoma City, for plaintiff in error.

G. T. Blankenship, Atty. Gen., Conner O.
Montgomery, Dist. Atty., for defendant in
error.

BRETT, Presiding Judge.

This is an appeal from a conviction for the crime of Murder, in which plaintiff in error, Ruby Roberta Cole, was sentenced to serve life imprisonment. Hereafter plaintiff in error will be referred to as defendant, as she appeared in the district court.

Defendant's brief sets forth five propositions of error. The first alleges that defendant's rights were violated, because she was not provided the "Miranda warnings" at the time she was arrested.[1] Secondly, that the State failed to prove that a crime had been committed. The third proposition alleges that the evidence was insufficient to meet the requirements of reasonable doubt; fourth, that the punishment was excessive, and was not supported by the evidence. The fifth proposition asserts that the State failed to prove the corpus delicti, or that a crime had been committed.

Defendant was convicted on the basis of circumstantial evidence—consisting of a series of events relating defendant to the scene where the dead body was found—coupled with the finding of the dead body of the handyman, who worked for defendant; and the fact that her small house situated southwest of Durant, Oklahoma, was burning at the time of the discovery. In fact, the burning house was the factor which caused the witnesses to go to the scene, when they discovered the dead body.

Defendant's second and fifth propositions of error will be discussed herein, as they pertain to the proof of a crime having been committed, and proof of the corpus delicti. The two main facts which seem to be controverted are: did the witnesses stop and talk to this defendant, and did the defendant fire the pistol which caused the death of John Dean (or Den) Bell. Admittedly, the circumstantial evidence is quite strong but, is it sufficient to support the conviction requiring life imprisonment, is the proposition which this Court seeks to answer.

The facts summarized are: On December 29, 1965, at about six or six-thirty P.M. three witnesses observed a house on fire about a quarter of a mile from the farm, where they were. Two of the witnesses testified they were at the barn watching the father of one of the young men, as he was milking his cows. The third witness testified that they were at the farm "penning up some cows." Nonetheless, two of the young men went to the scene of the fire in a pick-up truck. They stated that when they were some twenty-five to fifty yards from the burning house, they observed a blue 1960 Ford automobile leaving the vicinity; they stopped the vehicle and asked if someone was burning trash at the house, but the occupant of the car replied she didn't know. One of the men then inquired as to whether the house was on fire, to which the occupant of the car answered, she didn't know.

The two witnesses testified that they proceeded to the burning house where they discovered the man's body laying four to six feet from the steps of the small house. They returned to the pick-up truck and proceeded back to the farm house to notify the authorities. When they reached the section time road—at which they turned south to travel about a quarter of a mile to the farmhouse—they passed a blue Ford which was travelling the same direction, which they thought was the same car they had seen a few minutes earlier. One of the young men testified that he wrote down the license number of the car. They proceeded to the farmhouse, notified the authorities, and two of the three witnesses returned to the burning house, while one of the two young men—who first went to the burning house—proceeded to the highway to direct the authorities to the scene. Shortly thereafter, the authorities arrived at the scene.

Sometime after six-thirty P.M.—the record does not reflect the actual time defendant was arrested by the highway patrolmen—Trooper H. D. Van Arsdell and

1. See: Miranda v. Arizona, 384 U.S. 436, 85 S.Ct. 1602, 16 L.Ed.2d 694, June 13, 1966.

Trooper Norman Kious stopped the defendant's car west of Durant, Oklahoma, about half a mile west of the Roosevelt Bridge on U. S. Highway 70. Trooper Van Arsdell testified that a radio broadcast had been heard for the police authorities to be on the look-out for a blue Ford with license number CY–1631. [The license number reported by the young man] Trooper Kious had heard the same broadcast and had proceeded east from the direction of Ardmore, Oklahoma. The two Troopers were sitting in Van Arsdell's patrol car when defendant's car approached from the direction of Durant. They stopped the car; placed defendant under arrest; and Trooper Kious searched the automobile and found the pistol and some shells in a paper sack. The pistol turned out to be the weapon from which the fatal bullet was fired. Defendant was taken to the Durant jail, where she was incarcerated. The next morning her attorney visited her at the jail.

From the record it appears that defendant was not questioned by either of the Troopers, or at the jail and no confession was introduced at defendant's trial, nor was there any indication that one was sought by questioning of the defendant. Likewise, the record reflects that defendant was not subjected to any tests, concerning her condition of sobriety, notwithstanding the fact that Trooper Van Arsdell testified that she was intoxicated. He testified also, that defendant's automobile was travelling about forty miles per hour when it was stopped.

It was stipulated into the record that the pistol, and H & R .32 caliber revolver, serial number AA3722 and the shells found with it belonged to defendant; that the items had been purchased at Godsie's Sporting Goods Store in Del City, Oklahoma, on December 13, 1965; that it was the weapon from which the fatal shot was fired; that it was the same weapon found in defendant's automobile by the Highway Patrol Troopers; and that it had been in the possession of the court reporter since defendant's earlier habeas corpus hearing.

Dr. Robert E. Engles performed the autopsy on the morning following the shooting, after the body had been embalmed. He testified that the bullet was found by x-ray and he removed it. The doctor testified, "Well, the wound of entrance was in the left upper abdomen, in approximately this position, right here." In reference to his removal of the bullet he testified, "Well, the x-ray revealed the bullet to be in the right posterior flank area, in approximately this position, right here. And it was just underneath the skin, and we removed it, at that time." [2] On redirect examination, the doctor testified that he attributed the man's death to the bullet wound. He also testified that he found no indications of powder burns on the body; however, his examination was made after the body had been embalmed.

Mr. Ray Lambert, from the Oklahoma Bureau of Investigation, testified concerning his examination of the pistol and the bullet removed from the body, and identified the weapon as being the one from which the bullet was fired. He explained the "paraffin test" to the jury, and stated that such test could reveal whether or not a person had fired a weapon—if powder grains were found on the person's hand. He also testified that by the process of lifting fingerprints from a weapon, it could be determined whether or not the person had handled the weapon being examined. During his examination, Mr. Lambert was made a witness for the defense, and on cross-examination the prosecutor asked,[3] * * * if the body of the deceased * * was examined by the County Medical Examiner on the morning following the death * * * if there was an absence of powder burns from the wound, would that indicate to you, sir, that the gun was fired at a distance." Mr. Lambert replied, "Well, it could indicate one of two things—that the gun was either fired at a distance, or it was fired through cloth that did not permit the powder to reach the skin."

2. C.M. 98.

3. C.M. 129.

At defendant's trial neither of the two witnesses identified the defendant as being the person driving the 1960 model, blue Ford observed leaving the scene of the burning house. Both men testified that they thought a woman was driving the car when they stopped it, and inquired concerning the fire. Marshal Hart [age twenty-three] testified in answer to the question, whether a man or a woman was driving the vehicle, "It was a lady." Bois Williams [age twenty-five] answered the same question, "The best I could tell, it was a women." But neither of the two men identified the defendant as the driver.

Defendant testified in her own behalf and offered the testimony of several other witnesses to support her defense. The Sheriff was subpoened by the defendant and testified that his office made no fingerprints of either the defendant, or the deceased man; he stated further, that one of his employees was capable of taking fingerprints directly from the person, and that he was capable of lifting latent prints from objects handled. Mrs. Marjorie Smith testified that defendant was in the Hayden Smith Electric Company on December 29th for the purpose of buying electric fuses. Mr. Wilson Jones, line superintendent for the Rural Electric Co-Op. testified that he inspected defendant's house about one p. m. on the day it burned, and he recommended that defendant change her switchbox because it was overloaded. He stated also, that the deceased man was painting the porch when he made the inspection, and so far as he could tell defendant and the deceased were on friendly terms. The next witness Mrs. Mary Jane Loper, who worked for Stone's Propane business, testified that defendant was in the Propane Company office on December 29th and ordered a propane tank to be installed at her house the following day; and that she also ordered a propane heater. Vernon Glass, who lived in Oklahoma City, testified that he had known the deceased man for about three years, and identified the money orders in the amount of two dollars each. He stated that the money orders

were sent to the deceased's son and daughter on December 23rd, presumably as Christmas presents. When asked about the deceased man's general state of health and state of mind, the witness stated that the deceased had been in bad health; he was asked, "Did he tell you anything about any intentions that he might have?" to which the witness replied, "Well, he told me if he could muster up the courage he would end it all." This witness related that the deceased man was very much despondent most of the time, because of his health; and because of his inability to be with his children, both of whom were grown.

Concerning the pistol, the defendant testified that she bought it for her and her mother's protection, both of whom maintained a residence in Oklahoma City; she stated also, that she took it to the farm property, because the deceased expressed some fear at living there alone, without some means of protection. Deceased was a man about sixty-five years of age. Defendant testified that on the day the shooting occurred she left the pistol and the box of shells on a work bench; and, upon leaving she noticed that the pistol was gone, but the box of shells was there and had been left open. She said she picked up the shells and placed them in a sack with some small tools and placed the sack in her automobile, as she prepared to leave. She continued, that the window on the passenger's side of her car was open, and about the time she was ready to drive away the deceased stepped up to the car, tossed the pistol in the window and said, " * * * you may as well take this with you. I don't need it anymore." She related also, that just prior to his coming to the car, she heard a "bang" which could have been a pistol shot. Her testimony related her departure, where she drove, and concerning her apprehension by the Highway Patrol Trooper. On cross-examination, the prosecutor attempted to impeach the defendant's testimony—and succeeded in doing so on several points. Defendant testified on direct examination that her time of departure was "dusky-dark." The prosecutor showed

by the record of an earlier habeas corpus hearing, that defendant's testimony was, that she departed "between 6:30 and seven o'clock." She denied stopping and talking with the two young men, but the prosecutor also impeached that answer by the record of the habeas hearing. However, the consistent part of her testimony remained, that she did not shoot the deceased man, and that he must have shot himself. She also denied that there was any unfriendliness between her and the deceased, or that she had any reason for shooting him. We observe also, for what its worth that the record fails to reveal any motive or reason, to have been offered by the prosecution.

■ In view of the circumstantial evidence offered to prove the defendant guilty of the crime of Murder, considered with the fact that she was the only person present in the vicinity when the deceased was shot; and recalling the testimony of the expert witness from the Oklahoma Bureau of Investigation, Mr. Ray Lambert, who testified in response to the prosecutor's question—on cross-examination—concerning the absence of powder-burns on the body, "[I]t would indicate one of two things—that the gun was either fired at a distance, or it was fired through cloth that did not permit the powder to reach the skin." We cannot understand why the deceased's clothing was not introduced into evidence. Had the clothing been introduced, the jury could have applied Mr. Lambert's answer—to the proposition concerning powder-burns—without leaving the existing doubt. But, since the clothing was not introduced into evidence neither the jury, nor this Court on review, can explain the absence of the powder-burns on the body. This is true notwithstanding the fact that the body had been cleaned-up and embalmed at the time of the autopsy. Consequently, whether or not a crime was committed appears not to have been established beyond a reasonable doubt. Stated another way, the fact of the alleged killing appears not to have been established, as an independent fact, beyond a reasonable doubt.

■ This Court provided in the first paragraph of the syllabus to Crouse v. State, 39 Okl.Cr. 127, 263 P. 681 (1928):

"It is always incumbent upon the prosecution to establish each and every material element of the crime charged by the evidence beyond a reasonable doubt before the jury is warranted in finding the defendant guilty, and the burden of proof never shifts from the state to defendant."

■ It is also stated in Taylor v. State, 90 Okl.Cr. 169, 212 P.2d 164 (1949):

"The burden in a criminal case, whether for misdemeanor or felony, is on the prosecution to establish the guilt of accused, beyond a reasonable doubt, that is, to prove every essential element of the crime charged, every fact and circumstance essential to the guilt of the accused, as although the whole issue rested on it."

Title 21 O.S. § 693, concerning proof of murder, provides:

"No person can be convicted of murder * * *, unless the death of the person alleged to have been killed and the fact fact of the killing by the accused are each established as independent facts beyond a reasonable doubt."

■ Also in Looney v. State, 59 Okl.Cr. 338, 60 P.2d 214, (1936) it was provided:

"In every criminal prosecution it [devolves upon] the state to prove, first, the corpus delicti; and, second, that the crime charged was committed by the accused." See also: Wyatt v. State, Okl. Cr., 410 P.2d 86; Mayberry v. State, Okl.Cr., 449 P.2d 912, 914.

The evidence presented in this case was sufficient to prove that the deceased was shot; that the bullet wound caused his death; that the weapon from which the shot was fired was owned by the defendant; that the defendant was with the deceased on that day; that she may have been observed leaving the scene where deceased's body was found; and that the fatal weapon was found in her automobile,

when she was apprehended. This proof is sufficient to establish the corpus delicti to the extent of showing the death, the cause of the death and the weapon from which the fatal bullet was fired, but it fails to prove that the defendant committed the crime of murder. From all the circumstantial evidence offered one may surmise that—if the crime of murder was committed—the defendant committed the crime, but that is not sufficient to constitute the proof of murder. Ironically, the prosecution raised the one question—during the cross-examination of the ballistics expert—which is not answered by the record. On the other hand, defendant's explanation for the cause of the deceased's death does provide an answer to explain the absence of "powder-burns" on the body of deceased. The prosecution had in its possession the evidence which would have proved, beyond a reasonable doubt, either that the weapon was fired from a distance; or, that the weapon was fired at close range. But the clothing of the deceased was not introduced into evidence by the prosecution. Hence, defendant's explanation—standing alone, unrefuted—must provide the answer to the question raised by the prosecution.

▇ In Randolph v. State, 26 Okl.Cr. 332, 223 P. 723 (1924), it was stated:

"To sustain a conviction for murder resting solely upon circumstantial evidence, the circumstances must be consistent with each other and inconsistent with any reasonable hypothesis of innocence." See also: Jackson v. State, Okl.Cr., 403 P.2d 518 (1965); and Beard v. State, Okl.Cr., 410 P.2d 567 (1965).

Defendant was the only person in the vicinity of where the deceased was shot. She testified that the deceased must have shot himself, and denied that she shot him.

The doctor's testimony revealed that the deceased was shot in such a manner that he could have shot himself, as revealed by the record; and the doctor testified that there were no powder-burns on the body. The ballistics expert testified that cloth between the muzzle of the weapon and the victim could prevent powder-burns from appearing on the victim's body, after being shot at close range. Defendant offered testimony that the deceased man had expresssed certain thoughts of suicide only a week earlier, which tends to support defendant's assertion. And finally the prosecution had in its possession the clothing, which if introduced into evidence might have removed certain doubts, but chose not to use the evidence. Hence, a reasonable doubt was left concerning defendant's having been the agent for the cause of the death.

Consequently, as we review the record before the Court, the circumstances established were consistent with each other, but were not inconsistent with defendant's hypothesis of innocence. No other explanation concerning how the shooting occurred was offered by the prosecution, and the facts proved did not refute defendant's accounting. In other words, the crime of murder was not established as an independent fact beyond a reasonable doubt.

We are therefore of the opinion the conviction of defendant herein is not sustained by the record before the Court; and for the reasons stated herein District Court case no. 4910, Bryan County, Oklahoma, should be reversed.

It is so ordered.

NIX, J., concurs.

BUSSEY, J., dissents.