**Shirlyne WASHINGTON, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–75–812.**

Court of Criminal Appeals of Oklahoma.

May 7, 1976.

Sam J. Goodwin, Pauls Valley, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., Joe Mark Elkouri, Legal Intern, for appellee.

## OPINION

BUSSEY, Judge:

Appellant, Shirlyne Washington, hereinafter referred to as defendant, was charged and tried in the District Court, Garvin County, Case No. CRF–73–341, for the offense of Second Degree Murder, in violation of 21 O.S.Supp.1973, § 701.2, ¶ 1. The jury found her guilty of the offense of First Degree Manslaughter in violation of 21 O.S.1971, § 711, ¶ 2, and fixed her punishment at five (5) years' imprisonment. From said judgment and sentence a timely appeal has been perfected to this Court.

Briefly stated, at the trial the State's evidence in chief established that the victim, Lawrence Washington, died from a single gunshot wound to the area of the right temple at his residence in Wynnewood at about 1:00 a.m. on January 10, 1973. The body fell in the front doorway with the upper portion protruding on to the porch. The fatal shot lodged within the deceased's head, and was fired from a .22 caliber revolver found in the yard in front of the residence containing one spent shell and six live cartridges. The pistol was described as a double action revolver requiring that the hammer be cocked manually or by depressing the trigger before the gun would discharge. The defendant was the wife of the victim, and shortly after the shot was fired was in an hysterical condition at their residence "flopping her hand,

hollering what did she do, what did she do." (Tr. 23) When then asked what had she done, defendant replied that she did not know. After being advised of her rights, defendant gave a tape recorded statement the next day. In this statement defendant related that she returned home with her two children shortly after midnight on the night of the incident, and discovered her husband standing behind the front door when she entered the darkened house and turned on a light. An argument ensued and defendant told her husband to get his clothes and leave. When defendant talked with her husband briefly earlier that night at a nearby tavern, she told him the same thing but there was no argument and he just laughed and agreed to get his things and leave. At their home the victim again laughed and began gathering his clothes in the bedroom. Defendant went out on the front porch and removed a pistol that she had been carrying for some time from her purse. When the victim began to leave the house with some clothes, he grabbed the gun being held in defendant's hand and the pistol discharged accidentally. Defendant related that she had not pointed the gun at her husband and did not have her finger on the trigger. When the victim fell, defendant ran from the porch and threw the gun in the yard. She then went across the street to her aunt's home and told her aunt to call an ambulance and the police.

Defendant's testimony at the trial differed in only a few pertinent respects from her tape recorded statement. In direct examination defendant testified that she removed the gun from her purse to scare her husband, but in cross examination she added that she was scared of him. She was then eighteen years of age and weighed 145 pounds, whereas her husband was 6 feet tall and weighed 260 pounds. Defendant was holding the revolver down by her side when her husband grabbed her wrists and a struggle ensued before the gun fired accidentally. She was not immediately aware that the pistol had discharged or that her husband had been shot. Defend-

ant further testified that she did not cock the gun and maintained that she did not intend to kill her husband.

█ Defendant assigns as error the failure of the trial court to enter a directed verdict of acquittal upon her demurrer to the evidence interposed at the close of the State's case in chief as well as at the conclusion of the reception of all the evidence. Among other cases, defendant cites in support of this proposition *Cole v. State*, Okl. Cr., 467 P.2d 511 (1970). However, these cases are readily distinguishable for in her statement defendant here admitted that she withdrew the pistol from her purse following an argument with the victim and held the gun in her hand when the fatal shot was fired. Under the facts and circumstances presented, these inculpatory admissions might reasonably have caused the jury to conclude that defendant was guilty of premeditated murder. Although that statement further contained an exculpatory declaration that the revolver discharged accidentally when the victim grabbed for the gun, the weight to be given that declaration was for the determination of the jury. We are therefore of the opinion that the trial court correctly submitted the charge of Second Degree Murder to the jury. See *Chiles v. State,* Okl.Cr., 508 P. 2d 1108 (1973).

█ Defendant further argues that the evidence was wholly insufficient to sustain a conviction for First Degree Manslaughter. The necessity of an instruction upon First Degree Manslaughter as a lesser included offense under the circumstances presented might reasonably be questioned since the evidence tended to establish either permeditated murder or accident. See, *Lattimer v. State*, 54 Okl.Cr. 270, 21 P.2d 512 (1933). Nevertheless, there was some evidence from which the jury could conclude that defendant was angered or frightened and intentionally shot the victim with less than a premeditated intent to kill. We have previously rejected this proposition in other cases under analogous circumstances. See, *Young v. State,* 33 Okl. Cr. 255, 243 P. 763 (1926), *Brewer v.*

*State,* Okl.Cr., 452 P.2d 597 (1969), and *Chiles v. State,* supra. In any event, the record before this Court on appeal does not indicate that defendant objected to such an instruction, and as set forth in the fifth paragraph of the Syllabus to *Mayberry v. State,* 94 Okl.Cr. 301, 238 P.2d 362 (1951), this Court has repeatedly held that:

In a prosecution for murder, where the court submits the issue, and the jury find the defendant guilty of manslaughter in the first degree, although under the law and the facts the crime is murder, yet, if the defendant is convicted of a lower degree of homicide than that established by the evidence, no prejudice could have resulted to him and this court will not reverse a conviction because of such error."

This rule is premised upon the rationale that an instruction upon a lesser degree of homicide than that required by the evidence inures to the benefit of the defendant. See, *Abel v. State,* Okl.Cr., 507 P.2d 569 (1973), and authority collected therein. We therefore hold this proposition to also be without merit.

For the above and foregoing reasons, the judgment and sentence appealed from is, accordingly, *AFFIRMED.*

BRETT, P. J., and BLISS, J., concur.