**Charles L. LAUHOFF, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. A–17729.**

Court of Criminal Appeals of Oklahoma.

March 7, 1973.

Rehearing Denied April 2, 1973.

Jess Horn and M. Clyde Faulkner, Oklahoma City, for appellant.

Larry Derryberry, Atty. Gen., Michael Jackson, Asst. Atty. Gen., for appellee.

BUSSEY, Judge:

Appellant, Charles L. Lauhoff, hereinafter referred to as defendant, was charged, tried and convicted in the District Court of Woodward County, Case No. C–72–35, for the crime of Defrauding an Innkeeper. He was sentenced to serve a term of eighteen (18) months in the state penitentiary in accordance with the verdict of the jury, and a timely appeal has been perfected to this Court.

Briefly stated, the facts are that the State's evidence in chief began with the testimony of J. Eloise Whaley, the complaining witness. During the trial, Mrs. Whaley testified that defendant registered

at her motel, the Downtown Motel and Restaurant in Woodward, Oklahoma, under the name of "Buddy Allen," on October 16, 1971; that on November 5, 1971, she requested the defendant to pay his motel bill, but he never offered her any payment nor was any agreement made with defendant for a late or delayed payment; that the defendant left her motel on November 6, 1971, leaving considerable clothing in his rooms at the motel; that she filed charges against defendant on November 12, 1971 and was advised by the District Attorney to refuse payment if it was offered; and that the bill was finally paid on about January 12, 1972, by mail, after the Preliminary Hearing.

The State next offered the testimony of Mrs. Doris Shuck and Mrs. Sue Kimes, the latter's written testimony being stipulated to by defendant, who testified that defendant was the person who stayed at the motel rooms in question.

The State's next witness was A. C. Gaston, Sheriff of Woodward County, who testified he arrested defendant on December 20, 1971, pursuant to a felony warrant on the charge of Defrauding an Innkeeper; and that when he went to the house to arrest the defendant, the defendant was locked in the bathroom.

The Defendant's Demurrer to the State's evidence was overruled by the Court.

The defendant then offered his evidence to the court. Defendant's first witness, Miss Loyale Tidrick, testified that defendant registered under the name of "Buddy Allen" because of trouble with his ex-wife; that defendant went to Wichita on November 6, 1971, to repair a truck and that defendant sent her, the next day, to check with the motel, but she did not make payment; that defendant was in Woodward two to three days a week from November 6th to December 20th and defendant was arrested at her house on December 20, 1971.

Verl Horn testified that defendant borrowed money from him, in the form of a check, to pay his motel bill, but that he did not know what defendant did with the check.

The defendant, Charles Lauhoff, next testified he was registered in the name of "Buddy Allen" because his ex-wife was giving him trouble; that Mrs. Whaley had refused a personal check and some cash when she called and asked for payment; that on November 6th, he went to Wichita, Kansas, to repair a truck for Boyd Poole and on November 7th, sent Miss Tedrick to pay the motel bill, but that she did not pay the bill; that he never went to Mrs. Whaley's office to pay, but that the bill had since been paid.

A Motion for a Directed Verdict in defendant's favor was overruled by the court.

█ It is first contended, on appeal, that the trial court erred in overruling the Motion to quash the jury panel. The following appears in the transcript of the trial proceedings:

"THE COURT: What kind of a motion do you have? You have not filed a written motion?

MR. HORN: No, Your Honor, I haven't filed a motion, I came up here and thought about it after I got here. I will ask leave to file a written motion. The Motion goes—have you called the case?

THE COURT: I am calling it now.

MR. HORN: I move to quash the Jury Panel for the reason the panel was not called according to law, is not serving according to law. In that respect I would like to call Mrs. Teten."

After carefully searching the Original Record and Transcript, we fail to find where counsel for defendant ever filed a written Motion, as required by law. The applicable law is found in 22 O.S. § 634, which provides:

"A challenge to the panel must be taken before a jury is sworn, and *must be in writing*, specifying plainly and distinctly the facts constituting the ground of challenge." [Emphasis added]

In construing the statute, we stated, in McGriff v. Oklahoma City, Okl.Cr., 452 P.2d 156:

"An examination of the record fails to disclose that the defendant challenged the panel as required by the provisions of 22 O.S. § 634, supra, and therefore this question is not properly before us on appeal. . . ."

In accordance with McGriff v. Oklahoma City, *supra*, we are of the opinion that this assignment of error is not properly before the Court.

■ Defendant's second contention is that the trial court erred by overruling the Motion for a mistrial interposed when the District Attorney defined, or attempted to define "reasonable doubt" for the jury during voir dire examination of the jury panel. From the record, the following appears:

"MR. HORN: Let the record show that during the voir dire examination the District Attorney defined reasonable doubt to the jury at which time the defendant timely moved the court to grant a mistrial in this case for the reason that it is reversible error to define reasonable doubt to the jury at any time. And the court overruled the motion for a mistrial. Isn't that right.

THE COURT: True.

MR. HORN: Wasn't it.

MR. BARTON: Yes. Please the Court I would like to put my statement into the record.

THE COURT: Okay. Go ahead.

MR. BARTON: My statement being, 'Are each of you aware that reasonable doubt means a doubt based on your reason,' is that correct.

MR. HORN: I don't recall what your definition was.

THE COURT: That is the way the Court recalls it.

MR. HORN: My contention is that the State nor anyone else at any time can define or attempt to define reasonable doubt to the jury.

THE COURT: Record show that I admonished the District Attorney against it and instructed the jury to disregard it, because I didn't want to impress it on their minds.

MR. HORN: And the Admonition was given, of course, after the statement was made to the jury, which would necessarily have to be."

It does not appear that counsel for defendant, prior to voir dire examination, ever requested that the voir dire examination of the jury be transcribed for possible review by this Court for errors allegedly committed during said voir dire. This could account for the absence of the voir dire being present in the instant record, but from the statements of the judge and counsel for the respective parties, it does appear that during the voir dire examination that the District Attorney attempted to define "Reasonable Doubt" as a doubt based on reason. It is this Court's opinion that the admonition to the District Attorney by the trial court, and the court's instruction to the jury, was sufficient to cure the error. In paragraph seven of the Syllabus of Ethridge v. State, Okl.Cr., 418 P. 2d 95, this Court stated:

"An admonition to a jury not to consider the remarks of counsel, or witness, usually cures an error unless it is of such nature as, after considering the evidence, appears to have determined the verdict."

See also, Murff v. State, Okl.Cr., 379 P.2d 710 (1963) and Benefield v. State, Okl.Cr., 480 P.2d 626 (1971).

This leads us to a consideration of the defendant's third contention that the verdict and judgment rendered was the result of passion, bias, and prejudice created against the defendant by the District At-

torney in his remarks and argument to the jury. We have carefully examined the remarks of the District Attorney and find that they are not so prejudicial as to require modification or reversal, but to the contrary, we are of the opinion that they are well within the permissible range of argument granted to both the State and the defense in fairly commenting on the evidence. We further find that no objection was interposed to the remarks of the District Attorney. In the fifth paragraph of the Syllabus, of our recent case of Neal v. State, Okl.Cr., 506 P.2d 936, we stated:

> "When an objectionable statement is made by the prosecution, it should be called to the attention of the court by timely objection, together with a request that the jury be instructed to disregard the improper statement and in the event that the objection is overruled, an exception should be taken to the ruling of the court, preserved and argued in the Motion for New Trial. When this is not done the defendant is deemed to have waived any objection unless the remarks are so fundamentally prejudicial that the court cannot, by instructions to the jury, correct such error."

It is lastly contended that the trial court erred in overruling defendant's Demurrer to the evidence of the case-in-chief, and Motion for a directed verdict at the conclusion of the case because the evidence presented was a misrepresentation and a material departure from the evidence adduced at the preliminary hearing.

■ We are of the opinion that the evidence, although conflicting, amply supports the verdict of the jury. We have repeatedly held that where there is competent evidence reasonably tending to sustain the allegations of the charge, the trial court should not sustain a demurrer to the evidence. See Martin v. State, 92 Okl.Cr. 182, 222 P.2d 534 (1950); Dorrough v. State, Okl.Cr., 452 P.2d 816 (1969) and McDoulett v. State, Okl.Cr., 486 P.2d 654 (1971).

For all of the above and foregoing reasons, we are of the opinion that the judgment and sentence should be, and the same is hereby, affirmed.

BLISS, P. J., concurs.

BRETT, J., dissents.