**Charlie Wade REAMS, Appellant,**

**v.**

**The STATE of Oklahoma, Appellee.**

**No. M–76–231.**

Court of Criminal Appeals of Oklahoma.

June 23, 1976.

Howard D. Childers, Tulsa, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., Joe Mark Elkouri, Legal Intern, for appellee.

OPINION

BLISS, Judge:

The Appellant, Charlie Wade Reams, hereinafter referred to as defendant, was charged, tried before a jury and convicted of the crime of Resisting an Officer in the Legal Performance of His Duty. Punishment was assessed by the jury at "26 weekends in the county jail and $500 fine." From a judgment and sentence in conformance with the verdict the defendant has perfected his timely appeal.

Briefly stated, the evidence adduced at trial is as follows, to-wit: Tulsa County Deputy Sheriff Roy Clugston testified that on the morning of October 8, 1975, he was on duty working in the criminal division and had occasion to serve a bench warrant upon the defendant. Clugston arrived at the Mid-State Airport Hangar where the defendant was employed as a foreman at approximately 7:40 A.M. At approximately 8:00 A.M. the defendant came in the front door and the witness approached him and asked if he could talk to the defendant privately outside. They walked outside and Clugston showed the defendant his identification and the bench warrant for the defendant's arrest. The defendant was then advised that he was under arrest and that he would have to accompany Clugston downtown. The defendant then stated that he "knew all about this bull shit" and that he was going to call his attorney. Clugston told the defendant that he could call his attorney downtown and the defendant responded that he was going to make the call "now" and turned to enter the door. Clugston grabbed the defendant's arm and stated, "You are going to have to go with me." Defendant then jerked away stating, "Now, I'm not.", and entered the workshop area. Clugston further testified that the defendant, in response to a question of a co-worker, stated, "Oh, this jerk thinks he's going to take me to jail." The officer continued to follow the defendant stating that he was under arrest and the defendant then pointed his finger in the deputy's face and stated, "I'm tired of your bull shit. You are either going to get out of here or I'll have to put you out." The defendant then went into an adjoining room and made a call for assistance. After being taunted by statements of the defendant's co-workers and upon the return of the defendant, the officer placed the defendant in his vehicle. As they were driving back to the office, the officer made the statement, "You think you're pretty tough, don't you?", and the defendant responded, "No, not really, but I'm not afraid of any of you

bastards." Defendant subsequently took a swing at the officer who immediately stopped the car and handcuffed the defendant.

The first defense witness, James R. Simpson, then testified that he was a friend and co-worker of the defendant and that on the day in question when the defendant walked into the hangar Clugston stated, "Are you Charlie Reams?", and after an affirmative response stated, "You are coming with me." The witness then stated that the deputy "grabbed" the defendant but that the defendant broke loose and left the area. In response to the trial court's questions, the witness stated that it was possible that Clugston presented his identification and the warrant but that he did not see it. On cross-examination Simpson stated that he was very upset by the incident and was personally mad enough to interfere with the arrest being made by Clugston.

Ed Grange then testified that he also worked at Mid-State and that on the morning in question he saw Clugston waiting around the hangar. When Reams came in Clugston asked him if he was Charles Reams and then took the defendant by the arm and stated, "You're going with me." Grange further stated that he heard Clugston ask the defendant if he was resisting arrest and that both men made phone calls. The witness further stated that he did not know who Clugston was but that the defendant told him that he had a warrant for his arrest.

Lloyd Miller then testified that when he arrived at work he saw Clugston. When the defendant arrived Clugston grabbed him by the arm and told the defendant that he was going to have to "come with him." He further stated that the defendant backed away and said he was going to call his lawyer. The witness further stated that he did not see the entire incident, that profanity was used and that he did hear Clugston say, "You are under arrest, come with me. You are under arrest.", when he took the defendant by the arm. He fur-

ther recalled Clugston stating, "You are resisting arrest.", when the defendant broke away and described the incident as a "scuffle".

The defendant then testified in his own behalf stating that when he arrived at work Clugston approached him and stated that he wanted to see the defendant outside. On the way out Clugston told him that he had a warrant for his arrest and "You're going with me, downtown." Clugston never identified himself and produced no identification. Reams then related he pulled away from the man stating he was going to make a phone call and tell his boss. After the phone call and upon his attorney's advice he willingly accompanied Clugston to his vehicle. On the way to the office Clugston attempted to provoke the defendant and then waved down a police unit and handcuffed the defendant.

On cross-examination the witness stated that he did tell Clugston to "get out before I have you thrown out" after he had been told he was under arrest. He further stated that he assumed Clugston was from the sheriff's office.

 The defendant's first assignment of error urges that the trial court committed error in overruling the defendant's demurrer to the evidence. In support of his argument the defendant contends that the State failed to prove the requisite use of "force or violence" by the defendant. The defendant was charged under 21 O.S.1971 § 268 which states as follows:

"Every person who knowingly resists, by the use of force or violence, any executive officer in the performance of his duty, is guilty of a misdemeanor."

In *Cummins v. State*, 6 Okl.Cr. 180, 117 P. 1099, this Court held that in order to sustain a charge of resisting an officer in the discharge of his official duty, it is necessary for the proof to show some act of agression on the part of the accused from which the court and jury can reasonably infer forcible resistance or interference.

This Court has further held on numerous occasions that where there is competent evidence reasonably tending to sustain the allegation of the charge, the trial court should not sustain a demurrer to the evidence. See *Lauhoff v. State*, Okl.Cr., 508 P.2d 285.

In the instant case Officer Clugston testified that after showing the defendant his identification and presenting the bench warrant the defendant broke away from his hold, walked back into the building and stated to his co-workers "Oh, this jerk thinks he's going to take me to jail." The defendant further turned, pointed at the officer and stated, "I'm tired of your bull shit. You are either going to get out of here or I'll put you out." From the above, if believed by the jury, it is apparent that the defendant forcibly resisted his immediate arrest. It should also be noted that the defendant was in the company of his friends and co-workers, some of whom exhibited hostility towards the officer and an apparent disposition to help the defendant interfere with the officer. Therefore, although there is a conflict in the evidence, it is our opinion that there was sufficient evidence presented by the state to prove a prima facie case of the crime charged and the defendant's first assignment is without merit.

The defendant's last assignment of error urges that the jury verdict and the judgment and sentence in conformance with it were void for uncertainty and indefiniteness. As stated above the jury through its verdict assessed punishment at "26 weekends in the county jail and $500 fine."

 An examination of the record as designated and presented to this Court does not reveal any objection to the form or definiteness of the verdict. As stated in *Born v. State*, Okl.Cr., 397 P.2d 924, if defense counsel felt that the verdict was irregular or not in proper form, he should have objected to its sufficiency at the time it was returned into court so as to give the trial court an opportunity to have the ver-

dict corrected before the jury was discharged. Since no objection is revealed by the record the defendant may not raise the issue for the first time on appeal.

■ However, it is noted that the judgment does not state when each 48 hour incarceration shall commence and terminate. Therefore, it is our opinion that this matter should be remanded to the trial court with instructions to clarify the judgment and sentence. From an examination of the record as a whole it is our opinion that the defendant received a fair and impartial trial before a jury, that no material right of the defendant was prejudiced and the judgment and sentence with reference to the commencement and termination of each 48 hour weekend incarceration.

BRETT, P. J., and BUSSEY, J., concur.