Lawrence Kowaski ROBERTS, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–76–419.

Court of Criminal Appeals of Oklahoma.

Jan. 24, 1977.

Rehearing Denied April 4, 1977.

person for a period of Twelve (12) months after such revocation.

Ted J. Pasley, Ardmore, Court-Appointed Atty., for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., Douglas L. Combs, Legal Intern, for appellee.

## OPINION

BUSSEY, Judge.

The Appellant, Lawrence Kowaski Roberts, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Carter County, Case No. CRF–75–136, with the crime of Murder in the Second Degree, in violation of 21 O.S. Supp.1973, § 701.2. Defendant was tried by a jury, adjudged guilty and sentenced to an

indeterminate term of ten (10) years to life imprisonment in accordance with 21 O.S. Supp.1973, § 701.4. From said judgment and sentence defendant brings this timely appeal.

The first witness for the State was Mr. George Elisee, who testified that he was a detective with the Ardmore Police Department and had been such for the past eight years. He went to Cohee's Domino Parlor, located at 502 East Main in the City of Ardmore, Carter County, Oklahoma, on the 1st day of August, 1975, at approximately 3:00 p.m. to investigate a shooting. Upon entering the building he found Carl Cohee lying dead, half of his body in the bathroom and half in the storage room of the above establishment. The witness then identified State's Exhibits 1 through 5, which were photographs taken at the scene and depicted the deceased lying on the floor. He further described the general dimensions and layout of the interior of the domino parlor and stated that he had found a .20 gauge shotgun in the hallway; however, the deceased appeared to be unarmed.

The next witness was Michael Benjamin, who testified that he was employed at Cohee's Domino Parlor on the 1st of August, 1975. He related that around 3:00 p.m. on that date the defendant and the deceased had been playing dominoes when an argument between the two occurred. The witness was unable to describe the details of the argument, but stated that he felt certain that it had to do with money. Following this argument, another argument ensued between the deceased and Mr. Tom McGee over the ownership of a certain shotgun. The witness then stated that he was able to take the gun in question away from the two men and was attempting to place the weapon in a locker for safekeeping when he heard a shot coming from the hallway. He then immediately ran down the hallway and located the body of Carl Cohee lying on the floor as described by the previous witness. Benjamin also identified State's Exhibits 1 and 2 as photographs of the deceased and related that he had placed a pillow under the head of the deceased upon discovering him injured in the hallway.

On cross-examination, Benjamin repeated that an argument had occurred between Mr. Cohee and the defendant over some money and at one point the deceased had obtained a shotgun from his pickup truck and threatened the defendant during the dispute. While the defendant was being threatened, he observed the defendant reach in his pocket and throw down some money. He observed the deceased pick up the money and start toward his automobile. While the deceased was attempting to replace the shotgun in the automobile, he observed Mr. Tom McGee commence an argument with the deceased over the ownership of the shotgun. At this time the witness entered into the argument and obtained physical possession of the shotgun. He stated that at the time of the shot which he heard while putting the shotgun away, the person who had the last argument with the deceased, Mr. McGee, was in fact, sitting at the kitchen table of the establishment.

Finally, Mr. Benjamin admitted that he had been found guilty of Carrying a Concealed Weapon in August of 1974 and also found guilty of Resisting Arrest in March of 1975.

The next witness was Eulis Harrington who related that he was visiting one Hootie Williams at the Cohee Domino Parlor on August 1, 1975, around 3:25 in the afternoon. He also related that he heard a shot and upon investigation discovered Mr. Cohee lying on the floor. He also identified State's Exhibit No. 1 as a picture representing the deceased at the time he was discovered on the floor.

Mr. Carl Cloud next testified that he was a firearm and tool mark examiner for the Oklahoma State Bureau of Investigation in Oklahoma City, Oklahoma. Mr. Cloud stated that on September 18, 1975, he received some items from Dr. Sam Chapman, whom he knew to be the State Medical Examiner. Mr. Cloud then identified the items received as State's Exhibit 7 and related the articles were contained in a bright cardboard box. The witness then stated that upon exam-

ining the pellets and wad he received from Dr. Chapman, that it was his opinion the pellets had been fired from a .16 gauge shotgun.

Dr. A. J. Chapman testified that he was a forensic pathologist employed by the State of Oklahoma in the capacity of Chief Medical Examiner for the State. On August 6, 1975, he had occasion to perform an autopsy on Carl Cohee and related that he removed some pellets and plastic shotgun wadding from the deceased's body and identified those pellets and wadding as that previously identified by Agent Cloud as State's Exhibit No. 7. Finally, Dr. Chapman stated that the cause of death was a shotgun wound to the abdomen.

On cross-examination Dr. Chapman revealed that he identified the body of Carl Cohee by a tag affixed to the body and that the deceased had several old scars about his body, some of which had been caused by surgery and others of which he could not explain.

David Willingham next testified that he was a detective with the Ardmore Police Department and had been employed in such capacity in August of 1975. He arrived at the Cohee Domino Parlor at approximately 3:20 p.m. on the day in question. He then identified State's Exhibit No. 8 as a .20 gauge bolt-action shotgun he found leaning against the wall during his investigation. He also identified State's Exhibits 1 and 2 as photographs taken at the scene, which did, in fact, represent accurately what he saw upon arriving.

Mr. Herman Jackson, Sr. testified that he lived in Gene Autry, Oklahoma, which is located some ten or eleven miles from the City of Ardmore; that the defendant was his nephew and identified the defendant as L. K. Roberts. He then related that he saw his nephew, the defendant, at some time around 2:00 p.m. on August 1st at his mother's house in Gene Autry, Oklahoma. He testified that during a conversation with the defendant he was informed that the defendant had shot a man over $10.00. He stated that the defendant then left that location to go to the home of the defend-

ant's mother with the witness' son, Herman Jackson, Jr.

The next witness for the State was Raymond Matt, who testified that on August 1, 1975, he was at Cohee's Domino Parlor in Ardmore; that he had seen the defendant enter the domino parlor carrying a shotgun and at that time the deceased, Mr. Cohee, was talking on the telephone. He subsequently saw the defendant come out of the establishment immediately after hearing a shot, get in his car and drive off. This witness then identified the defendant as the same man he had seen entering the domino parlor.

On cross-examination Matt related that after the shooting he had returned to his car across the street from the domino parlor and at no time had he talked to the police on the day in question.

The final witness on behalf of the State was Herman Jackson, Jr., who identified the defendant as L. K. Roberts, his cousin. He further testified that between 4:15 and 4:30 p.m. on August 1, 1975, he had occasion to see the defendant at his home. He related that at that time the defendant asked him to take him to his mother's house and he agreed. While they were traveling between his home and the home of defendant's mother, the defendant told the witness that he had just shot L. F. Cohee.

After the State rested, and the defendant's demurrer was overruled, the defendant called as his first witness, Officer Joe Vance. Officer Vance related that in July of 1975, he had occasion to arrest the deceased, Carl Cohee, and his brother, Edward Cohee, on a charge of Public Drunkenness after the two had allegedly been threatening motorists on I-35 east of Ardmore.

On cross-examination, this witness stated that the shotgun involved in the previously mentioned incident had been in the custody of the Ardmore Police Department since July 5, 1975.

Juanita Roberts was called as the next defense witness and related that she was the mother of the defendant. She testified that she had a discussion with the State's

witness Raymond Matt in the hallway of the courthouse the day before, and further stated that Mr. Matt had told her at that time that he knew nothing about the shooting and only stated he had left the premises when L. F. Cohee came in with the gun.

The defense next called Officer David Willingham who testified that he was the same David Willingham who had testified on behalf of the State. He stated that he first interviewed Mr. Matt approximately two weeks after the shooting and at that time Mr. Matt denied knowing anything about the shooting. This witness related that after this trial began, he had again interviewed Mr. Matt at the request of the District Attorney, however, he did not know why Mr. Matt had decided to change his testimony.

The final defense witness was Mrs. O. D. Roberts, the grandmother of the defendant. She related that on August 1, 1975, the police had come to her home and informed her that her grandson had killed L. F. Cohee.

■ For his first assignment of error the defendant alleges that the court erred in overruling the demurrer of defendant to the evidence of the State presented at the preliminary hearing and in overruling defendant's Motion to Dismiss, filed before arraignment and renewed before trial. While the defendant has stated this as one assignment of error, we will treat the same as if it were two distinct propositions. With his first proposition that the court erred in overruling defendant's demurrer to the evidence presented by the State at preliminary hearing, we cannot agree. In his brief, the defendant cites *Cole v. State*, Okl.Cr., 467 P.2d 511 and 21 O.S., § 693, and argues that there was insufficient evidence presented at the preliminary hearing to sustain a conviction against him. We do not agree. In *Beaird v. Ramey*, Okl.Cr., 456 P.2d 587 (1969), we stated:

"It is well conceded that a preliminary hearing is not a trial to determine the guilt of accused, but only the two issues: 'Was a crime committed, and is there reasonable cause to believe the defendant committed said crime.' . . . "

See, also, *Allen v. State*, Okl.Cr., 527 P.2d 204 (1974). After a careful examination of the record of the preliminary hearing, we are of the opinion that there was sufficient evidence to cause the magistrate to bind the defendant over for trial, and, therefore, find this contention to be without merit.

For his next proposition under his first assignment of error, defendant alleges that the court erred in its failure to overrule his Motion to Dismiss, made at the time of arraignment and just prior to trial. Specifically, defendant alleges that he was denied his right to a speedy trial due to the delay in formal arraignment.

■ The record indicates that some thirty-six days after the preliminary hearing the defendant was brought before the court for the purpose of arraignment on September 25, 1975. However, the record also reveals that on September 4, 1975, or shortly after his preliminary hearing, the defendant, accompanied by counsel, was presented to the trial court for the purpose of arraignment. At that time, the following proceedings took place:

"THE COURT: All right. Now let me ask you this, you are charged with Murder in the Second Degree, and your case was set for formal arraignment, and this shows that you had preliminary hearing on the 19th day of August, 1975, and have not as yet been arraigned. Do you want the Court to put off your arraignment until you have had an opportunity to confer with the court appointed counsel that the Court appoints counsel for you, or do you want Mr. Mordy to stand by as counsel and the Court not permit him to withdraw until after you've been arraigned. And of course the purpose of arraignment is to have you enter a plea of guilty or not guilty and set your case for trial.

"MR. ROBERTS, the defendant: I would like to talk to my new attorney before I enter my plea.

"THE COURT: You would like for the Court to put your arraignment over?

"THE DEFENDANT: Yes sir.

"THE COURT: All right, then the
you ask the Court to pass the arraignment for today?

"THE DEFENDANT: Yes sir." [Tr. 11–12]

At this time the trial court then allowed Mr. Burke Mordy of Ardmore, to withdraw and appointed Mr. Ted Pasley to represent the defendant.

Even the most elementary reading of this portion of the transcript makes it abundantly clear the defendant not only acquiesced in the postponement of the formal arraignment, but affirmatively asked for the same. In *Maxey v. State*, Okl.Cr., 526 P.2d 951 (1974), this court, in ruling on a very similar situation, held that if the defendant requested a delay in his arraignment in order that he might change or obtain different counsel, that he could not later be heard to state that he had been denied his right to a speedy trial due to no fault of his own. We, therefore, find this contention to be warrantless.

■■■ For his next assignment of error, defendant once again raises more than one question of law in asserting that the court erred· in overruling his demurrer to the evidence presented by the State at the trial in refusing to instruct a verdict in favor of defendant, and error of the court in overruling defendant's Motion in Limine. While there is, no doubt, a similarity between his allegations that the court erred in failing to overrule the defendant's demurrer to the evidence and also refusing to instruct a verdict of acquittal of the defendant, we can see no connection with that proposition and the proposition concerning the court's failure to sustain defendant's Motion in Limine. However, once again we shall treat these matters separately. In his argument that the court erred concerning his demurrer, defendant makes a factual argument regarding his version of the interpretation of the facts and offers no authorities of law. We have repeatedly held that counsel for defendant must not only assert error, but must support his assertions by both argument and citations of authori-

ty. *Battle v. State*, Okl.Cr., 478 P.2d 1005 (1970) and *Sandefur v. State,* Okl.Cr., 461 P.2d 954 (1969). Nonetheless, an examination of the record in this case indicates that there was sufficient evidence to justify the trial court in overruling defendant's demurrer and overruling his request to direct a verdict of acquittal. This Court's longstanding rule with regard to a trial court's ruling on demurrer was stated in *Lauhoff v. State*, Okl.Cr., 508 P.2d 285 (1973), as follows:

" . . . We have repeatedly held that where there is competent evidence reasonably tending to sustain the allegations of the charge, the trial court should not sustain a demurrer to the evidence. See *Martin v. State*, 92 Okl.Cr. 182, 222 P.2d 534 (1950); *Dorrough v. State*, Okl.Cr., 452 P.2d 816 (1969) and *McDoulett v. State*, Okl.Cr., 486 P.2d 654 (1971)."

Turning now to the trial court's refusal to sustain defendant's Motion in Limine. Once again, defendant cites no authority in support of his argument, but instead makes a factual argument. See *Battle v. State*, supra.

For his fourth assignment of error the defendant alleges that the trial court erred in allowing the State to endorse Raymond Matt as a witness after the trial began. In support of his argument the defendant cites the Constitution of the State of Oklahoma, specifically Article II, § 20, which provides, in part, as follows:

" . . . He shall have the right to be heard by himself and counsel; and in capital cases, at least two days before the case is called for trial, he shall be furnished with a list of the witnesses that will be called in chief, to prove the allegations of the indictment or information, together with their postoffice addresses."

Defendant then points out that the witness, Raymond Matt, was endorsed as a witness by order of the court on the afternoon of November 20, 1975, approximately one and one-half days after the trial began. More specifically, the defendant argues that this late endorsement of this witness denied him the right to prepare his cross-examination

of the witness. Defendant then stresses that there are constitutional requirements prohibiting the State from endorsing witnesses without at least two days notice in capital cases.

In the case of *In Re Morphis*, Okl.Cr., 518 P.2d 315, which turned on the question of right to bail, we stated:

"Is Murder in the Second Degree, as defined above, a 'capital offense?' It is not. In *Ex parte Herndon*, 18 Okl.Cr. 68, 192 P.2d 820 (1920) this Court held:

■ 'A "capital offense" is one where the punishment may be death.' " The punishment prescribed by statute for conviction for Murder in the Second Degree is as follows:

"Every person convicted of murder in the second degree shall be punished by imprisonment in the State Penitentiary for not less than ten (10) years nor more than life. The trial court shall set an indeterminate sentence in accordance with this section upon a finding of guilty by the jury of murder in the second degree."

Therefore, we hold that the offense of Murder in the Second Degree in Oklahoma does not come within the provisions concerning endorsement of witnesses as outlined in the Oklahoma Constitution, Art. II, § 20.

Furthermore, this Court has held that the constitutional and statutory provisions in regard to endorsement of witnesses on order of the trial court does not divest the trial court of all its discretion. *Clark v. State*, Okl.Cr., 370 P.2d 46 (1962). Further, this Court held in *Plumlee v. State*, Okl.Cr., 361 P.2d 223 (1961), in paragraph 2 of the Syllabus:

"A trial court in the exercise of judicial discretion may permit the name of a witness to be endorsed upon the information even after the trial has commenced. This discretion should be exercised with the utmost precaution and ascertain within reasonable means whether the county attorney is acting in good faith. This rule is not adopted to permit the county attorney to lay behind the log and spring new witnesses on the day of trial, but to place a liberal construction upon the statutes as to meet the ends of justice. The failure to endorse witnesses before trial must be by virtue of inadvertence and in good faith, and in any event, permitted only where the defendant's rights are not prejudiced by the endorsement."

■ It is obvious form the record that the trial court in this case conducted an in camera hearing, out of the presence of the jury, to determine whether or not the State's motion to endorse an additional witness should be granted. At that time both counsel were allowed to ask questions of the witness as to what his testimony would be and the court made an inquiry as to why the witness was only just now being endorsed. At that time the State announced that they had only that day discovered the availability of the witness and his testimony. (Tr. 145–155). This argument of the State is supported by the testimony of Officer David Willingham, who testified that he had talked to the witness that day and had no explanation for why the witness had changed his testimony and was now willing to give evidence for the State. (Tr. 270–272) Based upon the reasons cited above, and the in camera hearing held by the trial court, and the lack of evidence in the record that the State was hiding behind a log and not acting in good faith, we find that the trial court did not abuse its discretion in allowing the State to endorse an additional witness. Accordingly, we find this assignment of error to be without merit.

For his fifth assignment of error, the defendant asserts that the court erred in overruling defendant's Motion for Mistrial after the State's opening statement. Specifically, defendant urges that he had filed a Motion in Limine regarding the testimony of Herman Jackson and his son. The trial court had then taken said Motion under advisement and had informed the parties that he would rule upon the Motion when, and if, the State called the two witnesses to the stand. However, the prosecutor then proceeded to inform the jury of the proposed testimony of these two witnesses while making his opening statement. De-

fendant moved for a mistrial which was overruled.

█ Defendant again offers this Court no authority for his assignment of error. He simply argues that his Motion for Mistrial should have been sustained. We have repeatedly held that we will not search the books for authorities to support assertions of error. *Battle v. State*, supra and *Sandefur v. State*, supra. Furthermore, Mr. Jackson and his son did testify at trial, and we find this assignment of error to be patently frivolous.

█ For his sixth assignment of error the defendant alleges that the trial court erred in allowing testimony and photographs in color depicting the gory wound present on the body of the deceased, which involved his intestines protruding out of his body. Defendant urges that this had no other purpose than to prejudice and inflame the jury and cites *Cottrell v. State*, Okl.Cr., 458 P.2d 328 (1969), in which this Court held that photographs which have no real probative value and are gruesome and gory, should not be shown to the jury as having no purpose other than to prejudice and inflame the jury. From an examination of the record we feel the photographs were properly admitted in the instant case. In *Pate v. State*, Okl.Cr., 361 P.2d 1086, we stated in the eighth and ninth paragraphs of the Syllabus:

"When a photograph is shown to be a faithful reproduction of whatever it purports to reproduce, it is admissible in evidence, as an appropriate aid to the jury in applying the evidence and this is equally true whether it relates to persons, things, or places.

"Although it is error to receive in evidence gruesome photographs of a homicide victim, designed primarily to arouse the passion of the jury, such photographs are admissible; when they are relevant to the issues before the court and their probative value is not outweighed by the danger of prejudice to the defendant."

And further, in *Abel v. State*, Okl.Cr., 507 P.2d 569 (1973), we stated:

"The photographs in question were identified by several witnesses as being true and correct pictorial representations of the body of Jackqueline Abel as they observed her at the hospital. The pictures were not taken after extensive autopsy surgery and were not gruesome. The photographs clearly depict the various bruises upon the child's body and their probative value is not outweighed by the danger of prejudice to the defendant."

The photographs in the present case were admitted to demonstrate to the jury the location of the body and to corroborate the testimony of Michael Benjamin in regard to where he found the body of the deceased, as well as to where the wound had been inflicted. (Tr. 92, 93) They were material and a proper part of the evidence in the instant case; particularly, to demonstrate to the jury the location in the building where the incident occurred, and the position of the body upon its discovery by both civilian witnesses and law enforcement officials. Finally, we note that these are small, standard polaroid colored photographs and are not in such detail which would lead us to believe that their sole purpose was to prejudice the jury.

For his seventh assignment of error the defendant alleges that the trial court erred in allowing the introduction of State's Exhibit No. 7 and the testimony of Dr. Chapman, the State Medical Examiner. More particularly, the defendant objects to the admission into evidence of the pellets and wadding removed from the body by the forensic pathologist due to the lack of a "chain of custody" and furthermore objects to the pathologist's testimony concerning the identification of the body upon which he performed an autopsy and testified at time of trial.

█ Once again, this Court is furnished no authority to support defendant's contentions. See *Battle v. State*, supra. A careful examination of the record as it pertains to the offer and acceptance of State's Exhibit No. 7 and as it relates to the testimony of Dr. Chapman, reveals that there is

no fundamental error involved which would require this Court to either reverse or modify the findings of the jury and trial court. Therefore, we hold this assignment of error to be without merit.

For all of the above and foregoing reasons, the judgment and sentence appealed from is accordingly, *AFFIRMED*.

BRETT, P. J. and BLISS, J., concur.